**[ORAL ARGUMENT NOT SCHEDULED]**

**Nos. 25-5144, 25-5145, 25-5150, 25-5151**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

PATSY WIDAKUSWARA, *et al.*,

Plaintiffs-Appellees,

v.

KARI LAKE, *et al.*,

Defendants-Appellants.

**REPLY IN SUPPORT OF DEFENDANT-APPELLANTS' EMERGENCY
MOTION FOR AN ADMINISTRATIVE STAY AND PARTIAL STAY
PENDING APPEAL**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
 *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
ABIGAIL STOUT
 *Attorneys*
 *Civil Division, Room 7215*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 514-1838*
 *daniel.tenny@usdoj.gov*

# INTRODUCTION[1]

At every turn, plaintiffs refuse to come to grips with the precise legal

dispute before the Court. Their efforts to require the government to make

grant payments conflate a statutory requirement to enter into a grant

agreement—which the government has done—with performance of that

grant agreement—which is challenged here, but should properly be

challenged in the Court of Federal Claims under the Tucker Act. As the

Supreme Court recently confirmed, cases alleging that the government

unlawfully terminated a grant agreement are properly brought in the

Court of Federal Claims. Nothing about the way the grant agreement came

into existence changes that fundamental jurisdictional limitation.

As to the employment portion of the district court's order, plaintiffs

seek to characterize the district court's unwinding of thousands of

individual personnel actions as if it were merely a single order requiring

the Agency to carry out its statutory functions. The district court did issue

---

[1] We are filing this identical reply in support of the four related
motions filed in *Widakuswara v. Lake*, No. 25-5144 (D.C. Cir.); *Abramowitz v.
Lake*, No. 25-5145 (D.C. Cir.); *Middle East Broadcasting Networks, Inc. v.
United States*, No. 25-5150 (D.C. Cir.); and *Radio Free Asia v. United States*,
No. 25-5151 (D.C. Cir.).

an order requiring the Agency to carry out a statutory function, and the government has not challenged that in the motion presently before the Court. What is at issue here is the district court's decision to set aside what it described as a "slew" of other actions, Add. 25, which neither the district court nor plaintiffs have even attempted to justify on a case-by-case basis.

On the equities, plaintiffs highlight that the government funds, once expended, will be difficult to recover, and point to various individualized harms that are largely relevant only insofar as they belie plaintiffs' assertion that they are not pressing individual employment claims that would be improper in an action under the Administrative Procedure Act. The government's motions for partial stay should be granted.

## ARGUMENT

### I. The Government is Likely to Succeed on the Merits

a. *The District Court Erred by Ordering the Restoration of the Grant Agreements*

1. As a general rule, when one party terminates a contract, the other can sue for breach of contract and receive damages if the termination was improper. That is the unremarkable position the grantees are currently in. They sued because they thought the Agency's termination of their grant

agreements was improper. The question whether the contract termination was improper or not is a contractual one that belongs in the Court of Federal Claims. The Government's position on this topic has not changed and has never been one that would leave the grantees without relief: The grantees can sue for breach of contract in the Court of Federal Claims — the proper forum for their claims because it is the forum that Congress has provided.

The Networks' contention that they "would have the exact same claims even if no grant agreement existed," Radio Free Asia Opp'n 14, highlights their misunderstanding of the state of affairs. If no grant agreement existed, then the grantees could make a statutory argument about why they are entitled to a grant in the first place. But here, there is no dispute that the Agency satisfied that statutory requirement. Instead, the Networks contend that they are entitled to payment of funding under that agreement, notwithstanding the government's efforts to terminate it. The crux of the grantees' claims is thus that the grant termination, which relied on a federal regulation for authority and a cited change in agency priorities, is improper: a classic contractual claim of the sort that the

Supreme Court considered in *Department of Education v. California*, 145 S. Ct. 966 (2025).

Indeed, as the *Widakuswara* plaintiffs point out, in *California*, "[t]he relevant statute directed the Secretary of Education to 'use certain funds to make grants to entities' that would recruit and train teachers." Widakuswara Opp'n 12 (quoting *California v. Dep't of Educ.*, 132 F.4th 92, 95 (1st Cir. 2025)). Here, the statute likewise directs the Agency to use certain funds to make grants, and the claim that the Agency has breached those grant agreements likewise arises under the Tucker Act and not the APA.

The Networks underscore the error in their analysis by stating that if the Agency entered into grant agreements and then promptly terminated them, "Congress's direction would not be worth the paper on which it is printed." Radio Free Asia Opp'n 20. That is plainly wrong; once the Agency enters into grant agreements, it incurs the legal obligations associated with those grant agreements, including the obligation to pay damages for any breach including an unlawful termination. The Networks' complaint that they cannot obtain injunctive relief to ensure that the government performs its obligations under the contracts is a thinly veiled attack on the longstanding principle that specific performance is

4

unavailable in contract disputes with the government. *See Albrecht v. Committee on Employee Benefits of Federal Reserve Employee Benefits System*, 357 F.3d 62, 68 (D.C. Cir. 2004) ("We have held that the Tucker Act impliedly forbids—in APA terms—not only district court awards of money damages, which the Claims Court may grant, but also injunctive relief, which the Claims Court may not." (quotation marks omitted)).

The Networks' invocation of the statutory discussion of termination further illustrates the distinction between a statutory claim and the claim they pursue here. The statute provides that "[g]rants awarded under this section shall be made pursuant to a grant agreement which requires that grant funds be used only for activities consistent with this section, and that failure to comply with such requirements shall permit the grant to be terminated without fiscal obligation to the United States." 22 U.S.C. § 6208(c)(5). A statutory claim would urge that the government had entered into a grant agreement without the required term, but the claim in this case is that the government exceeded the authority to terminate under the terms of the grant instrument itself. That is a contract claim. *See Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77 (D.C. Cir. 1985) ("where plaintiff was awarded contract and government terminated for

convenience, cause of action is on the contract despite plaintiff's allegations of statutory and constitutional violations" (citation omitted)).

The Networks' dispute about the scope of the right to terminate represents a retreat from the extreme conclusion that the statute provides them with an unqualified entitlement to appropriated funds. The Networks acknowledge that the "Agency has ample authority to ensure that the funds Congress appropriated are used consistent with statutory purposes," denying that the Agency might have no recourse to react to grantee misconduct. Radio Free Asia Opp'n 20. They thus appear not to dispute that the government can exercise its authority to oversee and supervise grantees. *See* Gov't Mot. for Emergency Stay (*Widakuswara*) 3-4. But they provide no explanation of why disputes about the propriety of grant terminations are statutory claims. And their acknowledgment that the grant can be terminated under some circumstances fundamentally undermines their "impoundment" theory, which also ignores that the government has statutory authority to enter into a new agreement with the Networks or, under certain circumstances, with others, *see* 22 U.S.C. § 6208(g).

Finally, the type of relief sought by the Networks is clear: they seek funds. Their opposition brief is replete with discussion about wrongfully withheld *funds* or the necessity to disburse *funds*. *See, e.g.*, Radio Free Asia Opp'n 8. (stating grantees "urgently needs funds"). No amount of artful pleading can dress up their monetary claim into an equitable one.

The *Widakuswara* plaintiffs, for their part, seem to suggest that various indirect harms provide them with greater rights to enforce the Networks' grant agreements than the parties to those agreements themselves. Widakuswara Opp'n 11. To state that proposition is to refute it. *See also Murthy v. Missouri*, 603 U.S. 43, 75 (2024) (rejecting "startlingly broad" theory of listener standing).

b. *The District Court Erred by Ordering the Reinstatement of the Agency's Employees and Contractors*

As to the employment remedy, plaintiffs' oppositions highlight the mismatch between the district court's relief and plaintiffs' legal claims, in addition to being rife with unresolved contradictions. Plaintiffs repeatedly disclaim that their lawsuit is about individual employment actions, instead asserting that they challenge only Defendants' wholesale "attempts to shut down" Voice of America. Abramowitz Opp'n 11; *see also* Widakuswara

Opp'n 16-19. But they largely ignore the district court's separate order, from which the government does not presently seek relief, to "restore [Voice of America] programming such that [the Agency] fulfills its statutory mandate that [Voice of America] 'serve as a consistently reliable and authoritative source of news,' 22 U.S.C. § 6202(c)." Add. 2. Upon holding that the Agency impermissibly failed to carry out a statutory function, the district court had no basis for going beyond requiring it to carry out that function and instead requiring the reinstatement of thousands of employees.

In their desire to shore up the district court's and their own agency-action analysis, the *Abramowitz* plaintiffs turn around and argue that this case is full of discrete and final actions, including the placing of 1,042 Agency employees on administrative leave and the termination of hundreds of union employees. Abramowitz Opp'n 14. Plaintiffs cannot have it both ways. They cannot be challenging only the wholesale attempt to shut down Voice of America and but also be challenging numerous discrete and final agency actions. They cannot deny that they are challenging employment actions, while also challenging almost 2,000 of them. And they cannot assert that "Abramowitz's claims would be

precisely the same" if the government "had not placed him on administrative leave," Abramowitz Opp'n 10—much less insist that "Abramowitz is not fundamentally challenging his placement on administrative leave through this lawsuit," *id.* at 11—while still defending an injunction that requires the government to reinstate Abramowitz, personally, to the position he held before March 14. Nor do they provide any explanation for their apparent view that every single personnel action taken since March 14 is an "illegal actio[n] that irreparably harm[s] Plaintiffs," *id.* at 17-18.

The *Widakuswara* plaintiffs, on the other hand, seem to disclaim challenging any employment actions, but nonetheless defend an order that attempts to undo thousands of individual employment actions. That is precisely the sort of impermissible programmatic challenge not cognizable under the APA. *See Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004); *City of New York v. United States Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (explaining that the "distinction between discrete acts, which are reviewable, and programmatic challenges, which are not, is vital to the APA's conception of the separation of powers" and prevents the judge from being injected into "day-to-day agency management"); Gov't

Mot. for Emergency Stay (*Widakuswara*) 22-23. Plaintiffs' response that their claims merely rely on "the unreasoned and unexplained radio silence of [Voice of America] programming" and that they "asked the district court to mandate compliance," Widakuswara Opp'n 19, provides a defense of the portion of the injunction that the government is not currently challenging but not to the aspects of the injunction at issue here. And no plaintiff explains how the district court could have, in its own words, reviewed "a slew of actions," Add. 25, without independently assessing each employment action to determine whether the court had jurisdiction and whether the particular action was lawful.

The *Widakuswara* plaintiffs respond by suggesting that all the employment actions can be rolled into a single action that the district court permissibly set aside. *Widakuswara* Opp'n 7. As noted, that is not how the district court characterized its own order, which referred to "a slew of actions." And in any event, the Agency did not terminate every employee, and thus self-evidently made determinations about which employees should be retained and which should be removed. Plaintiffs may disagree with the Agency's choices, but those disagreements do not support their insistence that the Agency made no individualized determinations. And

10

they certainly do not justify the district court's failure to tailor its relief to the legal claims over which it could properly assert jurisdiction and as to which it provided legal reasoning on the merits.

Although plaintiffs cite this Court's recent order lifting a partial stay in *National Treasury Employees Union v. Vought*, No. 25-5091 (D.C. Cir. Apr. 28, 2025), the difficulties associated with enforcement of an injunction that required the Consumer Financial Protection Bureau to carry out a wide swath of statutory duties has no analog in this case, in which plaintiffs identify a single statutory obligation that the government has already been ordered to fulfill. And plaintiffs provide no explanation for why a different result is warranted in this case from this Court's original decision issuing a partial stay in that case under very similar circumstances.

## II.    The Remaining Factors Favor a Stay

Plaintiffs' discussion of the harms demonstrates the impropriety of the district court's relief. They suggest that the absence of grant funds could force various grantees to curtail their expenses, thus making clear that the government could not expect to recover its funding if it were forced to make millions of dollars of payments in the coming days. *See* Radio Free Asia Opp'n 22 (explaining that the Networks will "immediately

spend the funds they receive."). And their discussion of the circumstances of individual employees highlights the mismatch between the asserted harms—which relate to the Agency's carrying out its statutory functions— and the sort of individualized circumstances of employees or contractors that might be appropriately considered in the sort of employment dispute that plaintiffs disclaim.

Plaintiffs also seek to minimize the government's efforts to carry out the President's Executive Order, but carefully avoid asserting that the Executive Order is in any way unlawful, instead arguing that the Agency has been overzealous in attempting to carry it out. Widakuswara Opp'n 22. Like the district court, plaintiffs have made no effort to demonstrate that every single employment action that was taken in response to the Executive Order was unlawful, and thus provide no basis in law or equity for the overbroad relief ordered by the district court. If the Agency, considering the President's direction, believes that a particular employee should not continue to have a position at the Agency, interfering with that personnel decision harms the federal government and the public interest.

## CONCLUSION

For the foregoing reasons, this Court should enter a partial stay

pending appeal, putting an administrative stay in place while it considers

these motions.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN

 *s/ Daniel Tenny*
DANIEL TENNY
ABIGAIL STOUT
*Attorneys*
*Civil Division, Room 7215*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1838*
*daniel.tenny@usdoj.gov*

APRIL 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,415 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*s/ Daniel Tenny*
Daniel Tenny
